UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JIMMIE GLYN SHARPLIN

VERSUS

HELMERICH & PAYNE
INTERNATIONAL DRILLING
COMPANY

CIVIL ACTION

NO. 07-716-JVP-CN

## RULING

This matter is before the court on a motion by defendant, Helmerich & Payne International Drilling Company, for summary judgment (doc. 12). Plaintiff, Jimmie Glyn Sharplin, has opposed the motion and defendant has replied to the opposition. Jurisdiction is based on 28 U.S.C. § 1332. There is no need for oral argument and the matter is now submitted.

## FACTS AND PROCEDURAL HISTORY

On June 13, 2007, plaintiff filed this suit in the Nineteenth Judicial District Court for the Parish of East Baton Rouge. The petition alleges that, on March 19, 2004, plaintiff "was bitten by what is believed to have been a spider while sleeping in a crew-trailer leased by [defendant]" for use by its employees. Plaintiff alleges that the incident was directly and proximately caused by the negligence of the defendant, including: (1) leasing trailers that were infested with spiders and other insects; (2) failing to properly inspect the crew trailers before permitting employees to live and sleep in them; (3) failing to fumigate and otherwise insure the cleanliness of the crew

1

trailers; and (4) other acts and omissions which will be shown at trial of this matter. (Petition, ¶¶ 1-2,4).

The petition also alleges that, as a result of the spider bite, he developed a staph infection requiring multiple surgeries and sustained injuries including pain and suffering, disability, mental anguish, medical expenses, lost earnings and earning capacity. The petition also alleges that plaintiff sustained significant scarring and disfigurement as a result of necrotizing fasciitis and surgeries performed to treat the staph infections. (Complaint, ¶¶ 3, 5).

Defendant removed the action on October 4, 2007, alleging that diversity jurisdiction was present and that removal was timely because plaintiff had not, as of the date of removal, served defendant.[1] Defendant filed the current motion for summary judgment on April 30, 2008. In its statement of undisputed facts, defendant sets forth the following facts it claims are material to the motion now before the court, as required by Uniform Local Rule 56.1. The material responses of plaintiffs are noted in footnotes where appropriate.[2]

---

[1] The notice of removal alleges that defendant is a Delaware corporation with its principal place of business in Oklahoma whereas plaintiff is an individual domiciled in Florida. Defendant also alleged that, in light of plaintiff's claim of scarring, disfigurement, medical costs and lost income, the amount in controversy requirement is also met. Defendant stated that though service had not occurred, plaintiff's counsel sent a copy of the petition to defendant's counsel on September 5, 2007. (Notice of removal, ¶¶ 2, 6-7).

[2] LR 56.2 provides:
> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion,

1. Plaintiff, Jimmie Glyn Sharplin, worked for defendant on drilling rigs. During the time in question, Mr. Sharplin was working as a floor hand on Rig 163, a land-based rig in Vermillion Parish.

2. The crew of Rig 163 worked shifts of seven (7) days out at the rig and then had seven (7) days off for a period of approximately eight (8) months.

3. Mr. Sharplin worked day shifts.

4. Mr. Sharplin, along with other members of the crew working on Rig 163, had the option of sleeping in crew trailers rented by defendant during the seven-day periods that they were working out at the rig. However, there was no requirement that they do so.

5. Mr. Sharplin opted to stay in a crew trailer during those periods.

6. Mr. Sharplin and the other members in his crew were paid only for the hours that they were actually on duty at the work site. They were not paid for their off hours spent in the crew trailers.

7. With regard to the alleged spider bite made the subject of this litigation, Mr. Sharplin did not see a spider or any type of insect bite him. Nor does Mr. Sharplin claim that anyone else witnessed a spider bite him.[3]

8. Mr. Sharplin did not know what the spot on his leg (which he now claims was a spider bite) was when he first noticed it.

9. Mr. Sharplin does not remember seeing any spiders in his trailer the morning he noticed the zit-like spot on his leg or the night before. Nor does he remember seeing any spiders during the five days that he was working on the rig prior to noticing the spot on his leg.

10. The medical records from Dr. H. David Brannon, Mr. Sharplin's family physician and the first physician who saw Mr. Sharplin after his purported

---

unless controverted as required by this rule.

[3]Plaintiff maintains, however, a genuine issue of fact exists as to "[w]hether the circumstantial evidence establishes by circumstantial evidence that plaintiff was bitten by a spider even though he did not actually see the spider bite him." (Doc. 15-2, ¶ 2).

spider bite, do not reflect that he diagnosed Mr. Sharplin with a spider bite.[4] Rather, they reflect that Mr. Sharplin was ultimately diagnosed with necrotizing faciitis, cellulitis, obesity, osteoarthritis, and gastroesophogeal reflux disease.

11. Dr. Bradford Pyle, the surgeon who operated on Mr. Sharplin's abscess, testified unequivocally in his deposition that the abscess "was not caused by a spider bite."[5]

12. Dr. Pyle explained that skin infections such as Mr. Sharplin's are often confused as spider bites.

13. Dr. Pyle testified that a wound from a spider bite would not be similar to the mark Mr. Sharplin had when he first saw him.[6]

14. Based on Dr. Pyle's testimony, Mr. Sharplin's methicillin resistant staphylococcus infection could have developed in any number of ways.

15. Dr. Pyle could not say with any degree of medical certainty how Mr. Sharplin developed his staphylococcus infection, but he could say that it was not from a spider bite.[7]

16. When the trailer in which Mr. Sharplin alleges he was bitten by a spider was delivered, it was clean and not infested with spiders or other insects.[8]

16(a) Tony Britt of T.B. Rental Service, Inc., is the owner of the trailer at issue and was personally involved in the cleaning and maintenance of their trailers

---

[4]See supra, n. 3.

[5]Plaintiff maintains that a genuine issue of fact exists as to "[w]hether Jimmie Glyn Sharplin sustained the methicillin resistant staphylococcus infection as a result of a spider bite as a source of entry of infection into his body. (Doc. 15-2, ¶ 4).

[6]See supra, n. 5.

[7]See supra, n. 5.

[8]Plaintiff maintains that a genuine issue of fact exists as to "[w]hether there was a problem with spider/insect infestation in the trailer occupied by Jimmie Glyn Sharplin in light of Terry Thrash's affidavit." (Doc. 15-2, ¶ 3).

(which includes spraying for insects) prior to delivery.[9] Mr. Britt personally inspected the trailer at issue to insure that it was in proper condition prior to its delivery to Rig 163.

17. Mr. Sharplin had nothing to do with the leasing of the trailer in question and has no personal knowledge of the condition it was in when it was delivered to Rig 163.

18. Howard Bamburg, David Cockerham, and Curt Ainsworth, all co-workers of Mr. Sharplin on Rig 163, do not recall seeing any spiders in the crew trailers.[10]

19. Several of Mr. Sharplin's co-workers have testified to the fact that the trailer was sprayed for spiders and insects.[11]

20. Vic Welch testified that it was his experience in his eighteen years as a rig manager that if there was a problem with insects in a particular trailer, the crew would report it to him and defendant would spray the trailer.[12]

21. When asked in his deposition if he ever reported any insect problems prior to his alleged spider bite, Mr. Sharplin testified that he recalled a fellow crew member had reported a roach problem. When asked if there were any other insect problems in the trailer other than roaches, he responded, "I don't remember."

22. Curt Ainsworth, David Cockerham, and Howard Bamburg testified that they did not recall any crew members reporting any insect problems with the trailer.[13]

---

[9]Plaintiff maintains that a genuine dispute exists as to "[w]hether the crew trailers were ever sprayed for spiders and other insects until after Jimmie Glyn Sharplin and others were bitten in 2004).

[10]See supra, n. 8.

[11]See supra, n. 9.

[12]See supra, n. 9.

[13]See supra, n. 8.

5

23. The crew members were responsible for keeping the trailers clean. (doc. 15-2).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in her favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. V. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "If the defendant in a . . . civil case moves for summary judgment . . . , [the inquiry is] whether reasonable jurors could find by a

preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson*, 477 U.S. at 252.

Because this is a diversity action, Louisiana substantive law applies. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "Questions of Louisiana law are resolved 'the way the Louisiana Supreme Court would interpret the statute based on precedent, legislation, and relevant commentary.'" *Molden v. Georgia Gulf Corp.*, 465 F.Supp.2d 606, 610 (M.D.La. 2006) (quoting *Occidental Chemical Corp. V. Elliott Turbomachinery Co., Inc.*, 84 F.3d 172, 175 (5th Cir. 1996)).

Plaintiff's claim for damages may be analyzed under Louisiana's general law of negligence, La.Civ.Code art. 2315,[14] or under La.Civ.Code arts. 2317 and 2317.1,[15] which provide for liability caused by the ruin, vice, or defect in things over

---

[14]La.Civ.Code art. 2315(a) provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. Plaintiff alleges that defendant failed to inspect the trailer and to fumigate and assure its cleanliness prior to permitting employees to live and sleep in it (original petition, ¶ 4).

[15]La.Civ.Code art. 2317 provides that:
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by . . . things which we have in our custody. This however is to be understood with the following modifications.

La. Civ.Code art. 2317.1 provides:
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Plaintiff alleged that defendant had custody and control of the trailer that was infested with spiders and other insects (original petition, ¶¶ 1, 4).

7

which a defendant has custody. Under either analysis, plaintiff bears the burden of demonstrating that plaintiff's negligence was a cause-in-fact of the injury sustained by the plaintiff.

**Cause-in-Fact under Louisiana's Article 2315 Analysis**

> Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under La.Civ. Code art. 2315. In order for liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause in fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (scope of protection element); and (5) actual damages (the damage element).

*Pinsonnealt v. Merchants & Farmers Bank & Trust*, 816 So.2d 270, 275-76 (La.2002).

The cause-in-fact element of the Article 2315 analysis requires plaintiff to establish that defendant's alleged failure to properly inspect, fumigate and insure the cleanliness of the crew trailer was a cause in fact of plaintiff's claimed injuries. Thus, under the facts alleged by plaintiff, he bears the burden of setting forth evidence to demonstrate not only that defendant was negligent, but also that defendant's negligence was a cause-in-fact of his being bitten by a spider, which in turn caused the staph infection.

**Cause-in-Fact under Louisiana's Article 2317.1 Analysis**

"[W]ith its adoption of La.Civ.Code art. 2317.1 to require knowledge or constructive knowledge, 'the Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim.'" *Burmaster v. Plaquemines Parish Government*, 982 So.2d 795, 799 (La.2008) (citing *Lasoyne v. Kansas City Southern R.R.*, 786 So.2d 682, 689, n. 9) (*quoting* Frank L. Maraist & Thomas C. Galligan, *Louisiana Tort Law* § 14-2, at 330-32 (1996)).

Under Article 2317.1, a plaintiff must prove that: 1) defendant had custody of the thing that caused plaintiff's damages; 2) the thing was defective because it had a condition that created an unreasonable risk of harm; 3) the defendant had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and 4) the defect was a cause in fact of plaintiff's injuries. *Netecke v. State, DOTD*, 747 So.2d 489, 494 (La.1999); *Lee v. State Through Dept. of Transp. and Development*, 701 So.2d 676, 678 (La.1997).

"In Article 2317.1's context, to establish cause-in-fact, the plaintiff must show that he would not have suffered damages "but for" the thing's ruin, vice, or defect, or that such ruin, vice, or defect applied as a 'substantial factor' in bringing about the damage." *Myers v. Dronet*, 801 So.2d 1097, 1108 (La.App. 3 Cir. 2001). Thus, to meet the cause-in-fact element under a 2317.1 analysis, plaintiff must set forth evidence from which a reasonable fact-finder could conclude: 1) that the crew-trailer was infested by spiders to such an extent that the infestation could be considered

9

a defect or vice in the thing;[16] and 2) that this infestation was at least a substantial factor in plaintiff's being bitten by a spider and causing his staph infection.

Thus, under the facts alleged, either analysis requires plaintiff to establish that his staph infection resulted from a spider bite that occurred in the crew-trailer.[17]

Assuming, without deciding, that plaintiff has set forth evidence sufficient to demonstrate that genuine issues of fact exist as to whether defendant was negligent and as to whether plaintiff was bitten by a spider, plaintiff still fails to meet his burden of setting forth evidence that the staph infection was caused by a spider bite.

Dr. Robert Pyle, the surgeon who treated plaintiff's staph infection, described the staph infection problem as "rampant" since Hurricane Ivan (Pyle deposition, p. 9) and repeatedly stated his opinion that plaintiff's staph infection "was not caused by a spider bite" (*id.* at pp. 6, 10, 22).[18] Plaintiff has offered no evidence to dispute those statements.

---

[16]This assumes that a spider infestation could *be* considered a vice or defect in a trailer. For the purposes of this motion, however, the court need not address this issue.

[17]Plaintiff's petition alleges that, he "was bitten by what is believed to have been a spider while sleeping in a crew trailer leased by Helmerich & Payne International Drilling Company" and "[a]s a direct and proximate result of [] sustaining the spider bite, plaintiff later developed a staph infection requiring multiple surgeries." (Petition, ¶¶ 2-3 (italics added)).

[18]The court also notes that plaintiff did not controvert defendant's statement of facts not in dispute, ¶ 11:
> Dr. Bradford Pyle, the surgeon who operated on Mr. Sharplin's abscess, testified unequivocally in his deposition that the abscess "was not caused by a spider bite."

The court therefore concludes that plaintiff has failed set forth evidence sufficient to establish the existence of a genuine issue of fact as to the causation element of his negligence claim.

## CONCLUSION

Accordingly, the motion by defendant, Helmerich & Payne International Drilling Company, for summary judgment (doc. 12) is hereby **GRANTED**, and judgment shall be entered in favor of defendant.

Baton Rouge, Louisiana, August 4, 2008.

*[signature]*
JOHN V. PARKER
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA